UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HMF AFFILIATES, LLC and MHYS
BRONX HOLDINGS, LLC,

                              Plaintiffs,

            - against -

NEIL WEISMANN, EMANUEL KLEIN,
and FERAY GIRGIN, as personal
representatives of the estate of Sam Klein,

                              Defendants.

**ORDER**

21 Civ. 10078 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

> Plaintiffs HMF Affiliates LLC and MHYS Bronx Holdings, LLC (the "Freund
Entities") have moved to transfer this action to the U.S. District Court for the Eastern District of
New York.  (Dkt. No. 34).  For the reasons stated below, the motion to transfer will be denied.

## BACKGROUND

### I.     SAM KLEIN'S EASTERN DISTRICT OF NEW YORK ACTION

> Defendants Neil Weismann, Emanuel Klein, and Feray Girgin are personal
representatives of the estate of the late Sam Klein (the "Klein Representatives").  Sam Klein
("Klein") partnered with Moses Freund – the principal of the Freund Entities – in several
business ventures.

> On December 31, 2019, Klein sued Freund and HMF Affiliates in the Eastern
District of New York.  See Klein v. Freund et al., 19 Civ. 7299 (EK) (RML) (E.D.N.Y.).

> Klein's complaint in the Eastern District action alleged breach of fiduciary duty
and breach of contract, and sought an accounting, a declaratory judgment, and injunctive relief in
connection with Freund's alleged misconduct involving a Staten Island shopping center in which

Klein and Freund were business partners.  Complaint ¶¶ 5, 12–13, <u>Klein v. Freund et al.</u>, 19 Civ. 7299 (Dkt. No. 1) (E.D.N.Y. Dec. 31, 2019).

In his complaint, Klein described himself as a "97-year-old senior citizen, widower," and alleged that he had been "intimidated and forced by [] Freund to withdraw $300,000 from [his] bank account . . . and give the checks to [] Freund." <u>Id.</u> ¶¶ 7, 56.  The complaint alleged that – in exchange for the $300,000 – Freund gave Klein a promissory note. The complaint further alleges that "[a]t age 97, [] Klein never would have agreed to provide a 15 year loan to [] Freund, as the note is written," but that "Freund did not allow [] Klein to read, review, or understand the [n]ote when [] Freund took [] Klein to the bank to get two bank checks totaling $300,000 . . . . Klein, at age 97, was tired at the end of the day when [] Freund took [] Klein to the bank to get two bank checks totaling $300,000." <u>Id.</u> ¶¶ 60–62.

The complaint further alleges that "Klein was NOT represented by an attorney in connection with the execution of the Contract of Sale between HMF Affiliates LLC and [] Klein" for the Staten Island shopping center; that Klein "was NOT represented by an attorney in the transfer of the Shopping Center from [] Klein to [an entity allegedly controlled by Freund]"; that "Freund directed [] Klein to sign the deed to the Shopping Center"; that "[n]o attorney was used to transfer the ownership . . . as all legal work was prepared by Freund"; that "Freund told [] Klein that [] Klein did not need an attorney"; and that "Klein trusted [] Freund and believed [] Freund that it was necessary to transfer the Shopping Center." <u>Id.</u> ¶¶ 79, 85-89 (emphases in original).

The Eastern District action was assigned to Judge Eric Komitee.  <u>Klein v. Freund et al.</u>, 19 Civ. 7299 (E.D.N.Y.).

In a February 3, 2020 letter, Freund and HMF Affiliates sought permission to move to dismiss. Klein v. Freund et al. (Dkt. No. 14). In a February 6, 2020 letter opposing that application, Klein states that he "intend[s] to move for a preliminary injunction by order to show cause because [] Freund knows that [] Klein is represented by counsel, but [] Freund is continuing to contact [] Klein and he is trying to again and still exert his undue influence over [] Klein . . . . Freund is continuing to send text messages to [] Klein's cell phone harassing [] Klein." Id. (Dkt. No. 16)

At a February 24, 2020 conference, Klein's counsel stated that "Klein was in his 90s" and that Freund "became like his son and was []trusted by Sam Klein . . . . And he took that trust and conveyed ownership interests in millions of dollars worth of property to himself." Klein v. Freund et al., 19 Civ. 7299 (Feb. 24, 2020 Tr. (Dkt. No. 63) at 6-7). Klein's counsel also asserted that Freund had "had Mr. Klein sign documents saying that [] Freund [] was the managing member of all [] Klein's entities in effect." Id. at 17. Judge Komitee observed that Klein's counsel was alleging that Klein's "advanced age and day-to-day pattern of . . . interact[ing] [with Freund] could give rise to a fiduciary duty." Id. at 8.[1]

In response, Freund's counsel stated that Klein was "of advanced age, but very impressive," and that "[t]he idea that [Freund], who was just out of yeshiva when he met [Klein], could somehow pull this, take advantage of [] Klein's advanced age, is really preposterous." Id. at 9.

Later in the conference, Judge Komitee and the parties discussed Klein's motion to enjoin Freund from contacting Klein directly. Judge Komitee asked, "[i]f I were to enter an

---

[1] Klein was not present for the February 24, 2020 conference. Id. at 45 (noting that Klein was in Florida at the time of the conference).

order, would you have any qualms with it being bilateral; neither party will communicate with the other party except through counsel?" Id. at 35.  Neither side objected.  Judge Komitee then directed "counsel to instruct their clients to communicate with each other only through counsel, not to reach out directly plaintiff to defendant or vice versa." Id.  Judge Komitee reiterated his oral order in a subsequent written order.  The written order states that "the parties [are ordered] to cease communicating with one another except through counsel." Klein v. Freund et al., 19 Civ. 7299 (Feb. 24, 2020 Order (Dkt. No. 18)).

On March 26 and March 27, 2020, Klein filed six additional cases in the Eastern District of New York against companies associated with Freund.  All six of these actions were assigned to Judge Komitee.  Klein voluntarily dismissed as to all six cases on April 20, 2020, before any motion practice or conferences.  See Klein v. MHYS Bronx Holdings LLC et al., 20 Civ. 1559 (EK) (RML) (E.D.N.Y.); Klein v. MHYS Bronx Holdings LLC et al., 20 Civ 1560 (EK) (RML) (E.D.N.Y.); Klein v. MHYS Bronx Holdings LLC et al., 20 Civ. 1561 (EK) (RML) (E.D.N.Y.); Klein v. MHYS Bronx Holdings LLC et al., 20 Civ. 1569 (EK) (RML) (E.D.N.Y.); Klein v. MHYS Bronx Holdings LLC et al., 20 Civ. 1570 (EK) (RML) (E.D.N.Y.); and Klein v. MHYS Bronx Holdings LLC et al., 20 Civ. 1571 (EK) (RML) (E.D.N.Y.).

On April 29, 2020, Judge Komitee conducted a conference in the original Eastern District case.  This conference was conducted telephonically because of the COVID-19 pandemic.  Klein v. Freund et al., 19 Civ. 7299 (Apr. 29, 2020 Tr. (Dkt. No. 64)).  At the conference, Klein's counsel – Gary Rosen – complained that Freund had accessed Klein's home. Id. at 8-9.  Judge Komitee asked if there was video showing Freund entering and exiting Klein's home.  This exchange followed:

Mr. Rosen:  I don't believe so, but Mr. Klein does have a son, who's in his 60s, who lives around the corner from Mr. Klein's house, and I believe has met Mr. Freund at the house. And you know, Sam, if you want to jump in . . . .

The Court:  You can put in his affidavit. You can put in the affidavit from the locksmith who changed the locks.

Mr. Klein:  That's fine.

Mr. Rosen:  My client –

Mr. Klein:  – yeah.

The Court:  Yeah.  I can't hear.

Mr. Rosen:  Hold on, Sam.

Mr. Klein:  Oh, I'm sorry.

Mr. Rosen:  Yeah.  He's saying that there are neighbors that would be able to testify and prove that, so we can get those and the son.

The Court:  Okay.  Your client, he shouldn't be testifying here as a fact witness –

Mr. Rosen:  Okay.

The Court:  – unless we're going to conduct a hearing, which we're not going to do today –

Mr. Rosen:  Okay.

The Court:  – but if he wants to testify under oath if –

Mr. Rosen:  Okay.

The Court:  – and when we do hold a hearing, that's certainly his prerogative.

Mr. Rosen:  Okay.  Thank you, Judge.

Id. at 10-11.  Klein did not speak at any other point during the conference.

According to the docket for the Eastern District action, after the April 29, 2020 conference, the parties did not appear again before Judge Komitee, either in person or remotely.

5

In a May 18, 2020 joint letter, the parties asked Judge Komitee to modify his no-contact order "so that [] Klein and [] Freund [could] communicate with each other to discuss potential settlement of this case." Klein v. Freund et al., 19 Civ. 7299 (May 18, 2020 Joint Ltr. (Dkt. No. 54)). Judge Komitee granted that request. Id., May 19, 2020 Text Order.

On July 14, 2020, Klein, Freund, and the Freund Entities entered into a settlement agreement (the "Settlement Agreement"). As part of the Settlement Agreement, Freund and Klein agreed to amend the operating agreements for their joint venture companies to include the following mutual option to purchase each other's share of their joint businesses:

> Upon the death of either member . . . , the other member . . . shall have six (6) months to exercise the option to purchase the . . . Selling Member's interest in the Company by executing a note in the amount of the appraised value . . . . The . . . Purchasing Member shall notice such election together with appraised value in writing to the . . . Selling Member. The . . . Selling Member (by his Estate . . . ) shall have thirty (30) business days to either accept such appraisal or present their own appraisal. Failure by the . . . Selling Member to respond shall be deemed acceptance of the . . . Purchasing Member's appraisal. If the higher of the two appraisals is not more than 110% of the lower appraisal, then the appraised value shall be the average of the two appraisals. If the higher appraisal is more than 110% of the lower appraisal, then within fifteen (15) days of notice by the Estate . . . , the two appraisers shall appoint a neutral third appraiser. The neutral appraiser's appraisal of the . . . Selling Member's interest shall be conclusive and binding on the members.

(Id. (Settlement Agmt. (Dkt. No. 36-2) ¶ 11) The Settlement Agreement bears the signatures of Klein and Freund but does not reflect the signature of any attorney. (Id. at p. 11)

On July 17, 2020, the parties to the Eastern District action filed a stipulation of dismissal, which Judge Komitee so-ordered on July 20, 2020. Klein v. Freund et al., 19 Civ. 7299 (Stip. of Dismissal (Dkt. No. 62); July 20, 2020 Text Order).

## II.   SUBSEQUENT LITIGATION

Klein died on April 17, 2021. (Cmplt. (Dkt. No. 1-1) ¶ 21; Answer (Dkt. No. 11) ¶ 21) After Klein's death, a dispute arose between the Freund Entities and the Klein

Representatives regarding the Freund Entities' attempt to exercise the purchase option in the Settlement Agreement.

The Freund Entities filed the instant action in Supreme Court of the State of New York, Orange County, on November 19, 2021.  (Cmplt. (Dkt. No. 1-1))  The Complaint seeks declaratory and injunctive relief as to the Freund Entities' rights under the Settlement Agreement.

The Klein Representatives removed the case to this District on November 25, 2021.  (Notice of Removal (Dkt. No. 1))

On December 13, 2021, the Klein Representatives filed their Answer, with counterclaims.  (Answer (Dkt. No. 11))  The Answer asserts fraud and lack of capacity as affirmative defenses.  (Id. ¶¶ 51-56)  In their counterclaims, the Klein Representatives seek a declaratory judgment that (1) the Settlement Agreement is void for fraud, duress, and lack of capacity; and (2) the appraisals the Klein Representatives have obtained are valid, while the appraisals the Freund Entities have obtained are invalid.  (Id. ¶¶ 82–126)

On February 10, 2022, the Freund Entities filed an action against the Klein Representatives in the Eastern District of New York relating to the Settlement Agreement.  That case is assigned to Judge Kuntz.  See HMF Affiliates et al. v. Weismann, Freund, and Girgin, 22 Civ. 769 (WFK) (E.D.N.Y.).

On May 20, 2022, the Freund Entities moved to transfer the instant case to the Eastern District of New York, arguing that "[b]ecause a primary issue in this litigation involves the process leading to the Settlement Agreement in the E.D.N.Y. Action – including whether Klein had the capacity to and did participate in that process – . . . the interest of justice, based on the totality of circumstances, warrants transfer of this litigation to the E.D.N.Y."  (Pltf. Br. (Dkt.

No. 35) at 6)  The Freund Entities' sole basis for their motion to transfer is that "the E.D.N.Y. (specifically, Judge Eric R. Komitee) has familiarity with" the issues of whether "Freund exerted undue influence and duress upon Klein, [whether] Klein lacked capacity, and [whether] Klein lacked proper legal representation when agreeing to settle the E.D.N.Y. Action," and therefore "adjudication could occur with more ease and efficiency in that venue." (Id. at 8-9)

The Klein Representatives filed their opposition on June 3, 2022, and the Freund Entities filed their reply on June 10, 2022.  (Dkt. Nos. 37-38)

## DISCUSSION

### I.    LEGAL STANDARDS

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  In this Circuit, courts apply a two-step analysis: "[f]irst, the court must determine whether the action could have been brought in the proposed transferee forum.  If so, the court must determine whether convenience of the parties and witnesses and the interests of justice favor transfer."  CVS Pharmacy, Inc. v. AstraZeneca Pharms. L.P., 2020 WL 4671659, at *4 (S.D.N.Y. Aug. 12, 2020).  In making this determination, courts consider the following factors:

> (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of the unwilling  witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to the plaintiff's choice of forum; (9) trial efficiency; and (10) the interest of justice, based on the totality of circumstances.

Salaam v. City of New York, 2021 WL 3077555, at *2 (S.D.N.Y. May 27, 2021) (citing Keitt v. New York City, 882 F. Supp. 412, 458-59 (S.D.N.Y. 2011)).

8

"The party requesting the transfer bears the burden of making a 'strong case for transfer.'" Megna v. Biocomp Labs., 220 F. Supp. 3d 496, 497 (S.D.N.Y. 2016) (quoting New York Marine and Gen. Ins. Co. v. Lafarge North America, Inc., 599 F.3d 102, 113 (2d Cir. 2010)).

Some courts in this Circuit have held that a plaintiff moving to transfer "'must show a change in circumstances since the filing of suit.'" Id. at 498 (quoting Harry Rich Corp. v. Curtiss–Wright Corp., 308 F. Supp. 1114, 1118 (S.D.N.Y. 1969)); accord Bakken Res., Inc. v. Edington, No. 15 CIV. 8686 (ALC), 2019 WL 1437273, at *6 (S.D.N.Y. Mar. 29, 2019). Whether post-filing events "amount to changed circumstances warranting transfer" depends on whether "the factors on which [plaintiffs] base their changed circumstances argument were known or should have been known to [plaintiffs] when they filed [the] action." United States ex rel. Fisher v. Bank of Am., N.A., 204 F. Supp. 3d 618, 626 (S.D.N.Y. 2016); see id. at 623 ("Circumstances that were 'known or should have been known to plaintiff long before the lawsuit' accordingly will not support a plaintiff's motion to transfer.") (quoting Ferrostaal, Inc. v. M/V EAGLE, No. 02-CV-1887 (NRB), 2003 WL 21496689, at *2 (S.D.N.Y. June 30, 2003)).

Other courts in this Circuit have held, however, that a plaintiff moving to transfer may show either a change in circumstances or that transfer would be "'in the interests of justice,' particularly where there would be severe prejudice to a plaintiff." Burke v. Bimbo Bakeries USA, Inc., No. 519CV902MADATB, 2020 WL 4597319, at *3 (N.D.N.Y. May 14, 2020) (quoting Posven, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 407 (S.D.N.Y. 2004)); see Nat'l Experiential, LLC v. Nike, Inc., No. 120CV3197ENVSIL, 2021 WL 9678642, at *4 (E.D.N.Y. July 31, 2021) ("With the Second Circuit yet to explicitly address the need for a change of circumstances requirement, the weight of authority favors the view that even though a

bona fide change in circumstances may be a sure sign that transfer of venue would be in the interests of justice, it does not augment or displace that essential inquiry.").

As discussed below, the Freund Entities have not shown either that there has been a change in circumstances warranting transfer or that the interests of justice favor transfer. Accordingly, their motion to transfer fails under either test.

II.   **ANALYSIS**

   A.   **Whether the Freund Entities Have Shown a Change in Circumstances**

The Freund Entities argue that they "seek[] a straightforward judgment enforcing an unambiguous contract," and were surprised that the Klein Representatives "would challenge the process leading to the parties' Settlement Agreement and the dismissal with prejudice of the prior E.D.N.Y. action." (Reply Br. (Dkt. No. 38) at 2)

Courts in this District have rejected the argument that a foreseeable defense constitutes a change in circumstances warranting transfer, even where the plaintiff represents that it did not anticipate the defense.  In Thyssenkrupp Materials N.A., Inc. v. M/V FEDERAL SHIMANTO, No. 13 CV 1543 CM, 2013 WL 3947749 (S.D.N.Y. July 30, 2013), for example, the plaintiff cargo owner sued defendant carriers for damage to and loss of plaintiffs' cargo while in route to Texas.  Id. at *1.  "Plaintiff [cargo owner] filed suit after obtaining [a loss] report from the stevedore who unloaded the cargo.  After suit was filed, [p]laintiff [cargo owner] learned that [d]efendant[] [carriers] had commissioned their own [loss] report, which reached a different conclusion."  Id. at *3.  After learning that defendants intended to contest the facts, plaintiff cargo owner moved to transfer the case to federal court in Texas, arguing that the transfer would permit greater access to relevant evidence.  The court held that "[t]he fact that plaintiff [would] actually have to litigate its case, instead of reaching the quick and amicable, not to mention, discovery-less settlement for which it hoped, [was] not a change of circumstance at

all, let alone a change of circumstance sufficiently serious to warrant moving this action." Id.
(alterations omitted).

Similarly, in United States ex rel. Fisher v. Bank of Am., N.A., 204 F. Supp. 3d
618 (S.D.N.Y. 2016), a qui tam False Claims Act case, the relators sued in the Southern District
of New York in the hope that the U.S. Attorney's Office would intervene and take on primary
responsibility for litigating the case.  When the Government declined to intervene, the relators
moved to transfer the case to the Eastern District of Texas, where they had other cases pending.
The court held that the Government's decision not to intervene was not a change in
circumstances warranting transfer, because "Relators should have been aware when they filed
this action that there was a significant possibility that the Government would decline to
intervene.  While the Government's intervention was by no means certain, Relators chose this
venue with this understanding and assumed a calculated risk." Id. at 625-26.

The same logic applies here.  Whether or not the Freund Entities anticipated that
the Klein Representatives would raise fraud, duress, and lack of capacity, those potential
defenses and counterclaims "should have been known to [the Freund Entities] when they filed
this action." Fisher, 204 F. Supp. 3d at 626.

As discussed above, in the original Eastern District action, Klein repeatedly
argued that Freund had exploited Klein's old age and lack of capacity, and obtained Klein's
consent to transactions through fraud and duress.  In the Eastern District complaint, Klein alleged
that "Freund took [him] to the bank to get two bank checks totaling $300,000 . . . . [when] Klein,
at age 97, was tired at the end of the day," and that "Freund did not allow [] Klein to read,
review, or understand the [n]ote" that Freund gave Klein in exchange for the $300,000. Klein v.
Freund et al., 19 Civ. 7299 (Cmplt. ¶¶ 61-62 (Dkt. No. 1)).  In that complaint, Klein also asserted

that he had not been represented by an attorney when he (1) executed a contract of sale for the Staten Island shopping center; (2) transferred ownership of the shopping center to a Freund entity; and (3) "sign[ed] the deed to the Shopping Center." Klein further alleged that "all legal work was prepared by [] Freund," that "Freund told [] Klein that [] Klein did not need an attorney," and that "Klein trusted [] Freund and believed [] Freund that it was necessary to transfer the Shopping Center." Id. ¶¶ 79, 85-89. Klein's counsel also brought up Freund's exploitation of Klein's age and Klein's lack of capacity in a February 6, 2020 letter to Judge Komitee and at the February 24, 2020 court conference.

Moreover, the Complaint in the instant action acknowledges that – in returning the Freund Entities' promissory note payments toward the purchase of Klein's share of the joint business ventures – the Klein Representatives had asserted that "[t]here has been no agreement on any buyout of any of the properties and membership interests." (Cmplt. (Dkt. No. 1-1) ¶ 27 (quotation omitted)) Given the lack of capacity assertions made in the original Eastern District litigation, and given that Klein was 98 when he signed the Settlement Agreement, it was eminently foreseeable to the Freund Entities that Klein's estate might assert a lack of capacity defense. Indeed, given these circumstances, the most reasonable interpretation of the Klein Representatives' assertion that "[t]here has been no agreement on any buyout of any of the properties and membership interests" is that Klein lacked the capacity to enter into the Settlement Agreement.

The Klein Representatives' counterclaims in the instant action mirror their earlier lack of capacity allegations. They assert that "Moses Freund exerted undue influence upon Sam Klein, who at the time was [98] years of age, while Moses Freund was approximately [29] years of age, and Sam Klein was in failing health physically and mentally, in order to procure the

execution of the Settlement Agreement." The Klein Representatives further contend that "[t]he Settlement Agreement should be invalidated" because Klein had no lawyer who was "fully familiar with [his] business interests" "involved in the settlement negotiations and drafting of the settlement agreement." (Answer (Dkt. No. 11) ¶¶ 100, 105)

Because the lack of capacity, fraud, and duress defenses and counterclaims asserted by the Klein Representatives in the instant action were entirely foreseeable, the Freund Entities have not demonstrated a change in circumstances that warrants transfer.

**B.**     **Whether the Section 1404(a) Factors Favor Transfer**

In considering whether the Section 1404(a) factors favor a transfer to the Eastern District of New York, the initial question is whether the case "could have been brought in the proposed transferee forum." CVS Pharmacy, Inc., 2020 WL 4671659, at *4. Here, it is undisputed that the instant case could have been brought in the Eastern District. (See Def. Opp. (Dkt. No. 37) at 17) Accordingly, this requirement is met.

As to the convenience of the parties and witnesses, and the interest of justice factors, the Freund Entities "acknowledge that each venue poses only slight differences as to the convenience, attendance, compulsion, and means of the witnesses or parties and/or access to documents." (Pltf. Br. (Dkt. No. 35) at 8 n.3) Plaintiffs argue, however, that "the ease of access to proof, trial efficiency, the interest of justice, and the totality of the circumstances strongly favor the E.D.N.Y.," because the Klein Representatives "allege that Freund exerted undue influence and duress upon Klein, that Klein lacked capacity, and that Klein lacked proper legal representation when agreeing to settle the E.D.N.Y. Action." According to Plaintiffs, "the E.D.N.Y. (specifically, Judge Eric R. Komitee) has familiarity with those issues, such that adjudication could occur with more ease and efficiency in that venue." (Id. at 8-9)

The Freund Entities have not shown that Judge Komitee has any unique knowledge or insight that would lead to a more efficient adjudication of the Klein Representatives' capacity, fraud, and duress defenses and counterclaims. As discussed above, the record in the original Eastern District action shows that Klein uttered six words during a telephonic conference before Judge Komitee, and never appeared before him in person. Judge Komitee was never called upon to make findings about Klein's capacity and mental health and would have had no record on which to make such findings. Nor have the Freund Entities asserted that Judge Komitee has firsthand knowledge of the negotiations regarding the Settlement Agreement, including whether attorneys were involved in those negotiations. In sum, Judge Komitee has no unique knowledge or insight as to Klein's capacity, and has no "familiarity with [the] issues [regarding Klein's capacity]." (Pltf. Br. (Dkt. No. 35) at 9) He merely heard allegations suggesting that Klein lacked capacity.

In contending that Judge Komitee "has familiarity" with the issues regarding Klein's capacity, the Freund Entities make the following arguments:

Plaintiffs first argue that Klein's counsel prompted Klein to speak at the April 29, 2020 telephonic conference, and that "Judge Komitee observed that Klein's counsel trusted Klein's ability to provide relevant facts directly to the court . . . . [and] that Klein was willing and able to participate." (Pltf. Br. (Dkt. No. 35) at 9) As an initial matter, Judge Komitee observed nothing, because the April 29, 2020 conference was telephonic. To the extent that Klein's counsel prompted Klein to speak, the exchange between counsel and client is apparent from the transcript. And to the extent that Klein's participation in the conference – which amounts to "That's fine," "yeah," and "Oh, I'm sorry," <u>Klein v. Freund et al.</u>, 19 Civ. 7299 (Apr. 29, 2020 Tr. (Dkt. No. 64) at 9) – sheds light on his capacity (<u>see</u> Pltf. Br. (Dkt. No. 35) at 9), Klein's

involvement in the conference is once again apparent from the transcript.  Klein did not appear before Judge Komitee, however, and his very limited participation in the conference gave Judge Komitee little opportunity to determine Klein's demeanor and cognitive abilities.

Plaintiffs also argue that "Judge Komitee made rulings reflecting a lack of concern over Klein's capacity to enter into a settlement agreement," citing Judge Komitee's May 19, 2020 order lifting the prohibition on direct party-to-party contact so that Klein and Freund could discuss settlement.  (Pltf. Br. (Dkt. No. 35) at 9)  No such inference can be drawn from Judge Komitee's order, however, because that order was based on a joint application.  While Plaintiffs may argue that Klein's counsel's consent to this joint application is proof that he believed that Klein had the necessary capacity, Judge Komitee was not called upon – and did not – make a finding as to Klein's capacity.

Plaintiffs also argue that "Judge Komitee is in the best position to assess Defendants' allegations that Klein did not have proper legal representation when agreeing to settle the litigation.  Having observed the legal representation by Klein's counsel – not only in the E.D.N.Y. Action but in [the additional Eastern District cases] – Judge Komitee is uniquely positioned to adjudicate issues about the adequacy of that legal representation when Klein entered into the Settlement Agreement."  (Pltf. Br. (Dkt. No. 35) at 11)  This argument is not persuasive, for multiple reasons.

As an initial matter, the Klein Representatives have not argued that "Klein did not have proper legal representation" or that his lawyer was ineffective.  Instead, the Klein representatives argue that the lawyers "who had represented [] Klein in [the Eastern District action]" were not "involved in the settlement negotiations and drafting of the Settlement

Agreement." (Answer (Dkt. No. 11) ¶ 105)  And Plaintiffs' reference to the additional Eastern

District cases – which were filed and then withdrawn within a month's time –is frivolous.[2]

       In sum, the Freund Entities have not shown that transfer would serve "the

convenience of parties and witnesses [and would be] in the interest of justice."  28 U.S.C. §

1404(a).[3]

---

[2]  Likewise frivolous is Plaintiffs' argument that the Klein Representatives "are asserting that
Judge Komitee's procedural and substantive rulings were improper," because "an incapacitated
plaintiff without proper representation should not be able to allege, litigate, negotiate, settle, or
voluntarily dismiss with prejudice any causes of action," and, thus, raising a capacity issue
implies that "Judge Komitee improperly permitted Klein, an incapacitated plaintiff, to proceed
with litigation, to speak directly with his adversary outside the presence of counsel, and to settle
and dismiss the case – all without a duly appointed representative or guardian ad litem." (Reply
Br. (Dkt. No. 38) at 2)  As this Court has stated a number of times, Judge Komitee was never
called upon to make any finding as to Klein's capacity.  And the Klein Representatives have not
stated or implied that any ruling by Judge Komitee was improper.

[3]  While Plaintiffs state that they "request the transfer of this action to the E.D.N.Y so that it may
be assigned to Judge Komitee" (Reply Br. (Dkt. No. 38) at 3 (emphasis omitted)), under the
Eastern District's Local Rules for the Division of Business – in the event the instant action were
transferred – it is unlikely that it would be assigned to Judge Komitee.  Under the Eastern
District's rules, "[c]ases [that] have been judicially determined to be related shall be assigned by
the Clerk to the judge(s) assigned to the case with the lowest docket number in the series of
related cases." E.D.N.Y. Local Rule for the Division of Business 3(c).  "A civil case is 'related'
to another civil case for purposes of this Rule when, because of the similarity of facts and legal
issues or because the cases arise from the same transactions or events, a substantial saving of
judicial resources is likely to result from assigning both cases to the same district and magistrate
judge.  A civil case shall not be deemed 'related' to another civil case merely because the civil
case involves identical legal issues, or involves the same parties.  Presumptively, and subject to
the power of a judge to determine otherwise . . . , civil cases shall not be deemed to be 'related'
unless each case is still pending before the Court."  Id. 3(a).

Given that the case before Judge Komitee is closed, if the instant case were transferred to the
Eastern District, it would likely be assigned to Judge Kuntz, because his case is "still pending."
Id. 3(a).

<u>**CONCLUSION**</u>

For the reasons stated above, Plaintiffs' motion to transfer is denied.  The Clerk of Court is directed to terminate the motion (Dkt. No. 34).

Dated: New York, New York
      January 24, 2023

                    SO ORDERED.

                    Paul G. Gardephe
                    United States District Judge

17